UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
UNITED STATES OF AMERICA,          :
                                   :
                                   :     **ORDER**
                                   :
         -against-                 :     05-CV-1 (DLI)
                                   :
DONELL MCCASKILL,                  :
                                   :
              Defendant.           :
----------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Donnell McCaskill ("McCaskill" or "defendant") is charged with violating the terms of his supervised release. For the reasons that follow the court finds McCaskill guilty of all charges and sentences him to thirty-six months of incarceration on Charge No. 1; nine months of incarceration on each of Charges Nos. 2-4; and twelve months on each of Charges Nos. 5-6; all sentences are to run concurrent with each other. An additional period of 24 months of supervised release with standard and special conditions, specified below, is also imposed.

McCaskill's term of supervision was imposed as a result of his September 8, 1999 conviction in the District of Maine for, *inter alia*, conspiracy to distribute cocaine, a class A felony.[1] He was originally sentenced to seventy months of incarceration followed by three years of supervised release.[2] While serving his term of supervised release, McCaskill was arrested, on December 3, 2004, for criminal possession of a controlled substance in the first degree in violation of N.Y. Penal Law § 220.21(1). As a result of this arrest, on January 10, 2005, this court issued an arrest warrant

---

[1] 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) (1999).

[2] McCaskill was sentenced on December 7, 1999 before U.S.D.J. D. Brock Hornby (District of Maine). Jurisdiction was transferred to Eastern District of New York on January 3, 2005.

for McCaskill based upon charges filed by the United States Department of Probation ("U.S.D.O.P.") alleging that defendant violated the terms of his supervised release.

The U.S.D.O.P. charged McCaskill with six violations: (1) committing another federal, state, or local crime, (2) illegally possessing a controlled substance, (3) associating with a person engaged in criminal activity, (4) leaving the judicial district without the permission of the court or probation officer, (5) submitting a false written report to his probation officer, and (6) failing to answer his probation officer's inquiries truthfully. McCaskill concedes his guilt on the latter three violations. (Tr. at 144-145, 147, 149, 150-152, 154.)

## Findings of Fact

Pursuant to 18 U.S.C. § 3583(e)(3), the court held a hearing[3] to determine whether McCaskill had indeed violated the conditions of his release. At the hearing, U.S. Probation Officer Joshua Luria ("Prob. Officer Luria"), New York City Police Officer Radames Tirado ("P.O. Tirado"), and Sergeant Frank Guarino ("Sgt. Guarino") credibly testified on behalf of the government. McCaskill testified on his own behalf. To the extent that defendant's testimony corroborates the testimony of the government's witnesses, this court finds the defendant credible. The court otherwise finds McCaskill's testimony patently incredible.

The following facts were adduced at the hearing: on December 3, 2005, P.O. Tirado and Sgt. Guarino walked toward a known drug corner at Throop Avenue and Willoughby Street in Brooklyn, New York. There, they observed defendant's rental car, a Chevy Tahoe, parked by the corner and saw Aaron Young step out of the defendant's car carrying a small child. P.O. Tirado, assigned to

---

[3] The hearing was held on February 3, 2005 and February 25, 2005. Unless otherwise noted, "Tr." refers to the February 3, 2005 transcript.

the Brooklyn North Gang Unit and familiar with gang related activities, including initiation rituals such as branding, testified that Young, also known as "Bat," previously had admitted to being a member of the Bloods gang and bears burn marks on his arm that signify Blood gang membership. Young is also a known drug dealer. On this particular day, as Young stepped out of the defendant's car, he warned defendant, "Yo, yo, yo, police." (Tr. at 75, 131.) Defendant, who was standing just outside of the car, was detained by Sgt. Guarino, while P.O. Tirado inspected the car's interior. Inside the car, P.O. Tirado detected a strong "chemical" odor that, based upon his training and experience in long-term narcotics investigations, was consistent with cocaine. (Tr. at 80.) P.O. Tirado observed powdered cocaine on the floor of the car and recovered over five ounces of cocaine from the car's center console. The defendant was then placed under arrest. Once at the precinct, P.O. Tirado recovered $1,462 in cash from the defendant.

McCaskill denied knowing that the cocaine had been in his car. He claimed that he picked up Young, known to McCaskill as "Bat," and Young's two-year old daughter on Linden Boulevard and offered to drive them to Bedford Stuyvesant after Young complained about his difficulty obtaining a taxicab. Once at the corner of Throop and Willoughby, McCaskill left Young with the car while he went inside the corner grocery store. He returned to find that Young had left his daughter in the car while McCaskill was away. Moments later, Young returned and, while removing his daughter from the car, warned defendant that the police were approaching.

McCaskill also testified about his purported lack of experience with powdered cocaine: though he had previously been convicted of conspiring to distribute crack-cocaine, he denied knowing whether five and one-half ounces of powdered cocaine was worth "a lot of money" (February 25, 2005 Tr. at 20), and even denied knowing what powdered cocaine looks like. (*Id.* at

3

17.) When confronted with the number of miles he had accrued while in possession of the rental car — almost 800 miles in nine days — he claimed to have been driving in and around New York City but not beyond.[4] (Tr. at 157.) However, defendant admitted to illegally traveling outside of the jurisdiction, to New Jersey, to rent the Chevy Tahoe. McCaskill, unemployed except for his work as a party promoter, claimed that the cash recovered from him at the precinct was connected to his party promoting activities. Additionally, though the rental car charges appeared on his credit card, he claims the rental cars were paid for, not by him, but by various girlfriends.[5] (Tr. at 146.) Defendant also testified that he traveled to Florida where his brother rented a car on his behalf. While defendant proffered ostensively innocuous explanations for his travels outside of the jurisdiction, he sought permission from his Probation Officer for none. Finally, defendant denied using cocaine, yet, after submitting to a urine test on January 4, 2005, his urine tested positive for cocaine.

## Conclusions of Law

**Charges Nos. 1 and 2**

Charges Nos. 1 and 2 specify that defendant, by possessing cocaine, violated the supervised release conditions prohibiting (1) the commission of another crime; and (2) the possession of controlled substances. With respect to these charges, defendant contends that because a New York

---

[4] In addition to the rental car in question, the government adduced evidence that McCaskill had previously rented two other cars. All three cars were rented from Enterprise Rent-a-Car in Elmwood, New Jersey. He accrued 1,200 miles in one week on the first car and 1,300 miles in less than a week on the second car. McCaskill claims not to have driven beyond New York City during any of these time periods. (Tr. at 156.)

[5] The first, second, and third cars were rented at a cost of $500, $1,080, and $1,078 respectively. (Tr. at 145, 149, 150.)

4

State Grand Jury failed to initially indict him for a violation of, *inter alia*, N.Y. Penal Law § 220.18(1), the court is now precluded from finding him guilty of these charges.[6]

This argument reflects a misunderstanding of the Fifth Amendment's Double Jeopardy Clause that prohibits repetitive prosecutions of the same person for the same act by the same sovereign. *Heath v. Alabama*, 474 U.S. 82, 88 (1985). "[A]n act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each." *Id.* at 89 (internal quotations and citations omitted). Here, of course, the New York State Grand Jury and the United States District Court are two different entities whose powers are derived from two different sovereigns. The Double Jeopardy Clause, therefore, is not implicated.

Moreover, a grand jury proceeding and a violation hearing are two different proceedings serving distinct purposes: "because a revocation proceeding is not a proceeding designed to punish a criminal defendant for violation of a criminal law, the defendant may be both punished for the supervised-release violation and prosecuted criminally for the same conduct." *United States v. Meeks*, 25 F.3d 1117 (2d Cir. 1994); *see, e.g.*, *Standlee v. Rhay*, 557 F.2d 1303, 1305, 1307 (9th Cir. 1977) (Double Jeopardy Clause does not prevent parole board's finding of guilt following acquittal in criminal prosecution); *United States ex rel. Carrasquillo v. Thomas*, 527 F.Supp. 1105 (S.D.N.Y. 1981), *aff'd*, 677 F.2d 225 (2d Cir. 1982) (dismissed indictment does not bar parole revocation proceedings based on same allegations). Thus, even if the grand jury had voted a dismissal of all the

---

[6] At the hearing, the government informed the court that the first New York State Grand Jury presentation resulted in a deadlock and was to be re-presented to another grand jury. The case was subsequently re-presented to another grand jury and defendant was indicted for, *inter alia*, violating N.Y. Penal Law § 220.18(1), Criminal Possession of a Controlled Substance in the Second Degree. *See People v. McCaskill*, No. 7888/2004 (Kings County). A copy of the indictment was made part of the record. (*See* Gov't's Mem. of Law, Ex. A.)

state charges, such a dismissal would not preclude this court's finding of guilt for violations of supervised released conditions premised on the same set of facts.

Based upon the foregoing, the court finds that the government has proven, by a preponderance of the evidence, that defendant committed another federal, state, or local crime (Charge No. 1) and that he illegally possessed a controlled substance (Charge No. 2).

**Charge No. 3**

McCaskill's third alleged violation, associating with a person engaged in criminal activity, relates to McCaskill's involvement with Aaron Young, a/k/a "Bat." P.O. Tirado, who was assigned to a specialized gang unit, testified that Young is a self-admitted Bloods gang member and is also a known drug trafficker. Prob. Officer Luria testified that when he questioned McCaskill "Did you know that Mr. Young was known to the police as a gang member and [as] dealing drugs" (Tr. at 19) McCaskill stated that he thought Young was only "into killing and hurting people." (*Id.*) McCaskill denied ever making such a statement and, in referring to his statements to Prob. Officer Luria, claimed, "I think maybe the story got twisted." (Tr. at 166.)

Because the court finds McCaskill's testimony incredible, in contrast to that of Prob. Officer Luria, P.O. Tirado, and Sgt. Guarino, the court concludes that the government has met its burden with respect to this charge as well.

## Sentence

Under 18 U.S.C. § 3583(e)(3), the maximum term of imprisonment for the revocation of supervised release stemming from a prior conviction for a Class A felony is five years. Revocation of supervised release is mandatory upon a finding that a defendant possessed a controlled substance. 18 U.S.C. § 3583(g).

**Charge No. 1**

A violation of supervised release that constitutes a criminal or a controlled substance offense is a Grade A violation. *See* U.S. Sentencing Guidelines Manual § 7B1.1(a)(1) (2004) ("USSG"). The USSG's recommended sentencing range for a Grade A violation for a defendant like McCaskill, who was placed in Criminal History Category I of the Guidelines with respect to the underlying offense for which supervised release was imposed, is twenty-four to thirty months. USSG § 7B1.4(a).

As required by § 3583, *United States v. Booker*, — U.S. —, 125 S.Ct. 738 (2005), *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), and *United States v. Fleming*, 397 F.3d 95 (2d Cir. 2005), in addition to the sentencing guidelines, the court has considered the factors set forth in 18 U.S.C. § 3553(a).

The court has considered the nature and circumstances of the offense and defendant's characteristics and finds that, although defendant was attending school during his term of supervised release and had earned a 3.28 grade point average, (Tr. at 137), he nevertheless showed a complete disregard for the law. Specifically, the court notes defendant's re-arrest during his first year of supervised release, the presence of a toddler in a car permeated with cocaine, the number of times defendant illegally left the jurisdiction, the falsehoods testified to in court, the unaccounted income and expenditures relating to the rental cars, and the defendant's drug use.

In light of the foregoing aggravating circumstances, an upward departure from the U.S. Sentencing Guideline range is warranted. The court finds that a sentence of thirty-six months of incarceration is appropriate for this violation.

**Charges Nos. 2, 3, and 4**

Under USSG § 7B1.1(a)(1), these violations are classified as a Grade C violations with a

Guideline range of three to nine months' incarceration. The court finds that under all the circumstances, a nine-month incarceratory sentence on each of these charges is reasonable.

**Charges Nos. 5-6**

Under USSG § 7B1.1(a)(2), these two violations are classified as Grade B violations. The Guideline range for this violation is four to ten months. USSG § 7B1.4(a). The court finds for the reasons stated above that an upward departure is warranted and a sentence of twelve months for each of these violations is reasonable.

The foregoing sentences are to run concurrently with each other. Additionally, a twenty-four-month term of supervised release is imposed with the first six months to be served by defendant under house arrest. In addition to the standard conditions set forth in 18 U.S.C. § 3583(d), the defendant is required to observe the following special conditions upon his release: (1) defendant cannot leave the Eastern or Southern Districts of New York without the prior permission of the court or of the U.S. Department of Probation; (2) defendant is not to possess a firearm; (3) defendant is not to commit any further crimes; (4) defendant must not possess controlled substances; (5) defendant is prohibited from associating with persons engaged in criminal activity; (6) defendant is to submit to random drug testing; (7) defendant is to submit to random searches; (8) defendant is required to maintain lawful employment.

**Conclusion**

The court finds that the government has met its burden of proving, by a preponderance of the evidence, that McCaskill violated six of his supervised release conditions. Accordingly, McCaskill is sentenced to thirty-six months of incarceration on Charge No. 1; nine months of incarceration on

each of Charges Nos. 2 through 4; and to twelve months of incarceration on the remaining Charges. These terms of imprisonment are to be served concurrently. Additionally, upon his release, defendant is to serve a term of twenty-four months of supervised release and is to observe the standard supervisory conditions as well as the special conditions imposed by the court. Based upon the totality of the circumstances, the court finds that the sentences imposed reflect the seriousness of defendant's violations, provides just punishment, promotes respect for the law, and will afford adequate deterrence to criminal conduct as well as protect the public from defendant's further crimes. 18 U.S.C. § 3553(a)(2)(A), (B), and ©.

DATED: Brooklyn, New York
June 29, 2005

/s/
DORA L. IRIZARRY
United States District Judge